UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

C.H. RACHES, INC.,

        Plaintiff,

v.

GENERAL ALUMINUM MFG.
COMPANY,

        Defendant.
                                    /

Case No. 2:16-cv-10976

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [29]
AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [24]**

In March 2016, Plaintiff C.H. Raches, Inc. ("Raches") filed a complaint alleging that Defendant General Aluminum Mfg. Company ("GAMCO") breached the parties' Representation Agreement ("Representation Agreement") and violated the Michigan Sales Representatives Commission Act ("MSRC"), Mich. Comp. Laws § 600.2961. ECF 1. GAMCO answered the complaint, and filed a counterclaim alleging that Raches breached the Representation Agreement. ECF 6.

On December 16, 2016, the Court entered a stipulated order regarding a partial settlement agreement and release. ECF 15. Relevantly, the parties agreed that Raches's only remaining claims arose "out of the sale and production of the Chrysler DT 4x4 and 4x2 Front Lower Control Arm" ("Chrysler DT") and that GAMCO's counterclaim for breach of contract remained. ECF 15, PgID 105. On March 17, 2017, GAMCO filed its motion for summary judgment. ECF 24. Raches filed its own motion for summary judgment on May 25, 2017. ECF 29. In their cross-motions for summary judgment, the parties address only Raches's remaining claim about commissions. ECF 24, 29. As such, the Court construes

1

their motions as motions for partial summary judgment. The Court reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 5.1(f). For the reasons set forth below, the Court will deny Raches's motion for summary judgment and grant GAMCO's motion for summary judgment.

**BACKGROUND**

GAMCO produces aluminum castings for automotive and non-automotive industries. On October 2, 2008, GAMCO and Raches executed a Representation Agreement. Raches agreed to serve as GAMCO's external sales representative and to solicit orders for automotive castings from particular customers listed in the Representation Agreement—including ZF Lemforder. ECF 24, PgID 211. Provision 5(c) of the Representation Agreement requires that, after no-cause termination, GAMCO pay commissions due to Raches "on all newly-created or existing Customer purchase orders arising out of any long-term arrangements accepted prior to the effective date of termination[.]" ECF 24, PgID 206. The parties explain the relevant requirements of 5(c) in the following ways:

| GAMCO's Interpretation<br>ECF 24, PgID 197 | Raches's Interpretation<br>ECF 29, PgID 367 |
|---|---|
| 1. A customer must issue purchase orders to General Aluminum | 1. Termination of the Agreement occurs without cause; |
| 2. The purchase orders must arise out of a long-term arrangement between the customer and General Aluminum; and | 2. The newly created purchase orders arise out of [a] long-term arrangement; and |
| 3. The long-term arrangement must have been accepted by General Aluminum before the termination of the Representation Agreement | 3. The long-term arrangement is accepted by GAMCO prior to the effective termination date |

2

The parties agree that GAMCO owes Raches commissions under the following conditions: (1) a newly-created or existing customer purchase order arises from a long-term arrangement and (2) the long-term arrangement was accepted prior to the effective date of termination.

In May 2015, pursuant to the Representation Agreement, GAMCO sent Raches a written notice of termination. The termination became effective 180 days later on November 4, 2015. In July 2015, before the effective termination date, GAMCO and ZF Chassis Components ("ZF") entered into a supply agreement ("Supply Agreement")[1] for a component called "Chrysler DS." ECF 28, PgID 343; ECF 27-5 (under seal). Raches contends that the Supply Agreement contained language indicating that GAMCO accepted a long-term arrangement with ZF in regards to Chrysler DT. That alleged long-term arrangement forms the basis of Raches's claim for post-termination commissions.

The parties dispute, therefore, whether GAMCO accepted a long-term arrangement with ZF prior to November 4, 2015; and, if so, whether any purchase orders arose from that long-term arrangement. The Court will address the parties' motions through that lens.

## STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if proof of that fact would establish or refute an essential element of the cause of action or defense. *Kendall*

---

[1] *See* ECF 30, PgID 511 (under seal). The Plaintiff did not attach the full agreement to its motion for summary judgment, ECF 29-6 (under seal), but essentially concedes the authenticity of the Supply Agreement in Defendant's response, *see* ECF 31, PgID 531.

*v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). A dispute over material facts is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To show that a fact is, or is not, genuinely disputed, both parties are required to either "cite[] to particular parts of materials in the record" or "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering cross-motions for summary judgment, a court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003). When evaluating cross-motions for summary judgment, courts are not necessarily required to find that one party wins and the other party loses. *See Park v. LaFace Records*, 329 F.3d 437, 444–45 (6th Cir. 2003).

## DISCUSSION

II.   Raches's Motion for Summary Judgment

The parties agree that "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of the written agreement." *Innovation Venture v. Liquid Mfg.*, 499 Mich. 491, 507 (2016) (quoting *Universal Underwriters Ins. Co. v. Kneeland*, 464 Mich. 491, 496 (2001)). Contract interpretation attempts to effectuate "the parties' intention at the time they entered into the contract." *Id.* (quotation omitted). Courts interpret and enforce unambiguous contracts as written.

"A party claiming a breach of contract must establish by a preponderance of the evidence (1) that there was a contract, (2) that the other party breached the contract, and

4

(3) that the party asserting breach of contract suffered damages as a result of the breach." *Miller-Davis Co. v. Ahrens Constr., Inc.*, 296 Mich. App. 56, 71 (2012), *rev'd in part on other grounds*, 495 Mich. 161 (2014).

Even if the Court assumed that a long-term arrangement between GAMCO and ZF existed, Raches failed to carry its burden showing that GAMCO breached the Representation Agreement or that Raches suffered damages. To show that GAMCO breached the Representation Agreement, Raches must offer evidence that "newly-created or existing Customer purchase orders [arose] out of [the] long-term arrangement[.]" ECF 24, PgID 206. Raches did not make the showing.

The record lacks evidence of any purchase orders "arising out of" an alleged long-term arrangement between GAMCO and ZF. The only purchase order in the record is an April 8, 2015 invoice from GAMCO to ZF for $9,950 for the production of 50 Chrysler DT pieces. ECF 29-17, PgID 445.[2] A purchase order that predates a long-term arrangement cannot arise out of that long-term arrangement. *See Arise*, Black's Law Dictionary (10th ed. 2004) (defining "arise" as "to originate; to stem (from)" and "to result (from)"). Raches rightly asserts that any "eventual purchase order" arising out of GAMCO's alleged long-term arrangement with ZF "will be newly created," and would trigger provision 5(c). But, if GAMCO has not received any purchase orders from the alleged long-term arrangement,

---

[2] GAMCO's current president, Jeffrey Trantham, confirms the authenticity of the April 2015 purchase order. ECF 24, PgID 202. Although Plaintiff contests the admissibility of Trantham's affidavit, corporate officers "are considered to have personal knowledge of the acts of their corporations and an affidavit setting forth those facts is sufficient for summary judgment." *Farmbrough v. Wal-Mart Stores, Inc.*, 611 F. App'x 322, 330 (6th Cir. 2015). The Court may consider Trantham's factual assertions.

then Raches is not yet owed post-termination commissions, and GAMCO has not breached the Representation Agreement.

The Court, therefore, will deny Raches's motion for summary judgment.

III.     GAMCO's Motion for Summary Judgment

Defendant's motion for summary judgment asserted only that the undisputed material facts demonstrated the absence of a long-term arrangement.[3] Even assuming that a long-term arrangement between GAMCO and ZF existed, there is no evidence that GAMCO received purchase orders from that long-term arrangement. If there were no purchase orders for Chrysler DT, then Raches was not entitled to post-termination commissions for Chrysler DT. The Court, therefore, will grant GAMCO's motion for summary judgment on Raches's breach of contract claim.

IV.     Remaining Issues

Neither party's motion for summary judgment addressed GAMCO's counterclaim for breach of contract. The Court, therefore, will require the parties to provide a Joint Status Report on the counterclaim by March 28, 2018. The parties will indicate whether they intend to pursue the counterclaim at trial. If so, the Court will issue an amended scheduling order setting a trial date. If the parties intend to forego the counterclaim, they must submit, instead of a Joint Status Report, a stipulated order of dismissal pursuant to the Local Rules by March 28, 2018.

**ORDER**

---

[3] Defendant's motion highlights the injection of an additional term into the Representation Agreement. GAMCO asserts repeatedly that "no long-term arrangement *for the production of Chrysler DT castings exists.*" ECF 24, PgID 198. *See also id.* at 191, 194, and 196. But that assertion misinterprets the plain language of the Representation Agreement.

6

**WHEREFORE**, it is hereby **ORDERED** that Plaintiff's motion for summary judgment [29] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment [24] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties shall **FILE** a Joint Status Report on the status of the counterclaim for breach of contract by March 28, 2018, or, alternatively, a stipulated order dismissing the case.

This order is not a final order and does not close the case.

**SO ORDERED.**

                                        s/ Stephen J. Murphy, III
                                        STEPHEN J. MURPHY, III
                                        United States District Judge

Dated: March 16, 2018

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 16, 2018, by electronic and/or ordinary mail.

                                        s/ David Parker
                                        Case Manager